UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| HELENA DELORES WEATHERSPOON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 4:06-CV-156 (CEJ) |
| | ) | |
| AT&T CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on defendant's motion for summary judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff, proceeding *pro se*, opposes the motion and the issues are fully briefed.

Plaintiff brings this action, claiming that she was terminated from her employment by defendant because of her race and gender, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq*. Plaintiff also asserts claims of hostile environment, "deprivation and/or defamation of character," unfair and unequitable wages, and violation of the Family and Medical Leave Act ("FMLA"). Plaintiff seeks compensatory and punitive damages as well as equitable relief.

**I. Background**

Plaintiff began her employment with defendant in 1999 as an account representative. Her duties included contacting potential customers in an effort to enroll them in defendant's telephone services. After six months on the job, plaintiff was promoted to Manager Relief ("MR"). As an MR, plaintiff continued to perform her

regular duties as an account representative, but was given the added responsibility of filling in for a Manager/Team Leader who was absent.

Shortly thereafter, plaintiff was promoted to Acting Manager. As an Acting Manager, plaintiff assumed the duties of a full time Manager/Team Leader, but she was not officially made part of management. Consequently, her compensation was not on par with other team leaders, but was closer to the compensation she would have received as an account representative.

Approximately two years later, plaintiff was formally named a Manager/Team Leader. In that role, plaintiff supervised a group of Customer Contact Associates. Plaintiff was responsible for monitoring customer calls, answering questions, writing performance reviews and handling "takeovers", which involved speaking to customers when they asked to speak to a supervisor. Plaintiff's supervisor during this time was Glenn Townley. Mr. Townley had been in a management position throughout plaintiff's employment with defendant. In her deposition, plaintiff testified that Mr. Townley had "probably" approved or somehow been involved in her earlier promotions.

On August 14, 2003, plaintiff received a Letter of Warning stating that her attendance was unsatisfactory. The letter stated that "[c]ontinuation of unsatisfactory attendance may result in disciplinary action up to and including dismissal." According to the letter, in 2003 plaintiff had been tardy eleven times, called out sick ten days, and had taken one personal absence. She had used all of her personal days and had only one and a half days of vacation

time remaining.  The letter informed plaintiff that future vacation time had to be approved a week in advance and that all flex time and comp time requests had to be made a day in advance.  Plaintiff met with Mr. Townley and another member of management to discuss the letter.  However, plaintiff refused to sign the letter, because she felt that it was unfair that she had not received a prior, oral warning that her attendance had become a problem.  While plaintiff admits that she was absent and tardy on several occasions, she disputes that her absenteeism was serious enough to warrant a letter of warning from Mr. Townley.  According to plaintiff, the letter overstates the number of times that she was absent and tardy.  Additionally, plaintiff states that her absences were for excusable or unavoidable reasons.   It is undisputed that plaintiff was absent on several dates between January 1 and August 14, 2003, and that she received a letter of warning to that effect.

Plaintiff claims that she was told by Mr. Townley during their August 14, 2003 meeting that he would rescind the letter of warning, provided that plaintiff achieved a perfect attendance record in the subsequent sixty days.  Mr. Townley never rescinded the letter, although plaintiff admits that, during the next sixty days, she "probably had taken a sick day or two" because of recurring chest pains.  The attendance record shows that plaintiff continued to have attendance and tardiness problems throughout 2003.  Plaintiff claims that, while she cannot say that the reports are inaccurate, there was a "very good reason" behind any absence, and because of that, she questions whether the absences should be held against her.

On January 6, 2004, Mr. Townley gave plaintiff a Final Letter of Warning, again indicating that plaintiff's attendance was poor.[1] Plaintiff was placed on a five day unpaid suspension. Plaintiff continued having medical problems,[2] which caused her to inquire with defendant's attendance office about her options under the Family and Medical Leave Act. On March 9, 2004, plaintiff again experienced chest pains and visited the attendance office in an effort to fill out any required forms under the FMLA. According to plaintiff, someone there told her that she did not need to worry about the forms, as they would send be sent to her at a later time. Plaintiff states that the attendance office was so concerned about her condition that they placed her in a wheelchair and telephoned her significant other, who also worked for defendant, to take her to the hospital.

Plaintiff remained in the hospital until approximately one o'clock in the morning. She called Mr. Townley the next day, March 10, and informed him that she was still feeling weak and would not be able to make it to work. She also informed Mr. Townley that she had scheduled a doctor's appointment for the following day, March 11, that she had a psychiatrist appointment on Friday, March 12, and that she would be on vacation out of town the following week. Mr. Townley

---

[1] Plaintiff denies receiving a copy of the final letter, but admits that Mr. Townley told her that he was issuing it.

[2] The undisputed record shows that plaintiff often claimed to be suffering from chest pains which made it difficult for her to breathe and exert herself. These pains had previously caused plaintiff to be admitted to a hospital for monitoring. Plaintiff's doctor was unable to find any medical diagnosis causing the pain and opined that it could be caused by stress. Plaintiff's doctor referred her to a psychiatrist.

told plaintiff that she needed to be at work on March 12 in order to give instructions to a Manager Relief employee, who would be covering for her while she was on vacation. Plaintiff told Mr. Townley that she would attempt to come in for work after her 11:00 a.m. appointment, but that if she still felt weak she would leave immediately after giving instructions to the Manager Relief.

On March 12, plaintiff arrived at work at approximately 3:00 p.m.[3] She volunteered to work on Saturday to make up some hours. She claims that she still had not received any forms regarding the FMLA. After an hour or two of work, Mr. Townley called plaintiff into his office and terminated her employment. Notes taken by Pat Gregory, another Sales Manager, during the meeting, show that Mr. Townley told plaintiff that her absences continued to be unsatisfactory.

Plaintiff asserts that she was treated differently from other employees because she was an African American woman. She claims that other managers were routinely two or three hours late, took longer lunches, and had a "different set of rules" than she had. She notes that, although the majority of employees supervised by Mr. Townley were African American, she was the only African American female who held a Team Leader position directly under his supervision. Plaintiff cites an occasion when Mr. Townley was pressuring her to terminate the employment of a sales representative who was on plaintiff's team. The sales representative was also an African

---

[3] Plaintiff states that she does not recall why she did not arrive at work until 3:00 after an 11:00 a.m. appointment. She believes that she may have just decided to work a half day.

-5-

American woman and Mr. Townley believed she was not putting forth enough effort into making sales. Plaintiff claims that the representative was doing better than other representatives who Mr. Townley did not want fired. Yet, plaintiff acknowledges that Mr. Townley would not authorize the termination of the employment of a second sales representative, also an African American woman, even though plaintiff believed she was had unsatisfactory sales numbers. In further support of her claim of racial and gender discrimination by Mr. Townley, plaintiff also claims that he commented to her about an African American co-worker, and stated that he was "not going to let this black woman beat [him]". Plaintiff admits that, while she did complain to Mr. Townley's supervisors about his management style on at least one occasion, she never raised any claim of racial or gender discrimination until after her employment was terminated. In addition to her claim of discrimination, plaintiff also asserts that Mr. Townley created a hostile work environment. Plaintiff alleges that Mr. Townley "placed the management team on alert concerning [her]". She alleges that Mr. Townley refused to give her team credit for their accomplishments and often micro-managed her team members in an effort to prevent plaintiff from succeeding. Plaintiff also contends that she was not given the regular pay raise when she was promoted and that her merit raises were taken away from her. She also alleges that she was denied her application for FMLA because, even though she asked on multiple occasions, she was never given any paperwork to begin the process.

**II. Legal Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. Agristor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-587 (1986); Fed. R. Civ. P. 56(c). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corporation v. Citrate, 477 U.S. 317, 322 (1986).

**III. Discussion**

In an employment discrimination suit, "an employee can survive the employer's motion for summary judgment in one of two ways."

Russell v. City of Kansas City, 414 F.3d 863, 866 (8th Cir. 2005). The first is where "the employee can produce direct evidence of discrimination." Id. Direct evidence is that which shows "a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." Griffith v. City of Des Moines, 387 F.3d 733, 736 (8th Cir. 2004). Alternately, if there is no direct evidence of discrimination, an employee may survive a motion for summary judgment "by creating the requisite inference of unlawful discrimination through the familiar three-step burden-shifting analysis originating in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)." Russell, 414 F.3d at 866-67.

The Court begins by noting that plaintiff has not produced any direct evidence that her employment was terminated because of discriminatory reasons. Instead, the undisputed facts show that plaintiff was absent and tardy on several occasions. In the year prior to her termination, plaintiff admits receiving two letters of warning regarding her absenteeism.[4] Each letter stated that future disciplinary action, including dismissal, would be considered if plaintiff's attendance did not improve. Plaintiff also admits that she was placed on unpaid suspension for five days due to her continued problems with her absences and tardiness. Although plaintiff may dispute whether her absences and late arrivals were

---

[4]It is immaterial that plaintiff claims she did not actually receive a paper copy of the second warning letter. She admits that she was verbally told that the letter existed.

-8-

excusable, it is clear that they occurred and that her termination, at least facially, was the result of her attendance.

Because plaintiff has not presented any direct evidence of discrimination, summary judgment in defendant's favor is appropriate unless plaintiff has created the inference of discrimination pursuant to the McDonnell Douglas burden-shifting analysis. Under this analysis, plaintiff must first make a *prima facie* case of racial or gender discrimination. See McDonnell Douglas Corp., 411 U.S. at 802. If plaintiff succeeds, then "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions." Wells v. SCI Management, L.P., 469 F.3d 697, 700-01 (8th Cir. 2006). "Upon such a showing, the burden shifts back to the employee to show that the employer's reason was pretextual." Id.

The Court will first determine whether plaintiff has presented a *prima facie* case of race or gender discrimination. To satisfy this initial burden, plaintiff must present evidence which shows that: (1) she is a member of a protected class; (2) she was qualified for her job; (3) she suffered an adverse employment action; and (4) there are facts which give rise to an inference of unlawful gender or race discrimination, such as a showing that members of a different race or gender were treated differently. Id. at 700. Defendant does not dispute that plaintiff has met the first and third elements of the *prima facie* case. However, defendant claims that plaintiff has not shown that she was qualified for her job, or that any facts exist giving rise to an inference of discrimination, such as differential treatment towards employees of a different race or gender.

-9-

In her positions as manager and as team leader, plaintiff admits that it was important for her to be present to support her team of sales representatives. Further, she acknowledges that she was absent on several occasions and that she had previously been disciplined for her attendance. Plaintiff testified that she was aware that her attendance had become an issue with Mr. Townley and that she needed to be present at work. Nevertheless, her attendance problems persisted. Based on the undisputed facts and plaintiff's own deposition testimony, it is doubtful that an employee with plaintiff's attendance record could adequately serve as a manager or team leader for sales representatives.[5]

Even assuming that plaintiff has shown she was qualified for her position, she has not met the fourth prong of the *prima facie* case. In her deposition testimony, plaintiff admits that Mr. Townley "probably" was involved in plaintiff's prior promotions, although she later stated that she was unsure of whether he had approved her promotion to team leader. However, in her response to this motion, plaintiff does not dispute defendant's assertion that Mr. Townley approved each of her promotions. The fact that Mr. Townley approved plaintiff's promotions, despite her gender or race, militates against any inference that he would later terminate her employment because of that gender or race.

---

[5]Given plaintiff's quick promotions and the fact that her salary range nearly doubled her salary during her tenure with defendant, a reasonable conclusion is that plaintiff possessed the skills to successfully perform her job. However, plaintiff's actual performance, not her qualifications, is at issue here.

Further, it is relevant that, at the time plaintiff was terminated, 63% of the employees supervised by Mr. Townley were of the same race as plaintiff. While plaintiff was the only team leader who was African American, the majority of team leaders working under Mr. Townley were also women. The record simply contains no evidence for the Court to conclude that Mr. Townley acted differently towards African Americans or females than he did towards male employees or female employees of a different race.[6] Indeed, Mr. Townley would not give plaintiff permission to terminate the employment of an African American female sales representative, even though plaintiff believed that termination was necessary. It is also relevant that plaintiff's race or gender was not discussed by anyone at any time prior to her termination.

Plaintiff does claim that she overheard Mr. Townley refer to an African American co-worker and state that he was "not going to let this black woman beat [him]." Such a statement, even if true, does not necessarily impute any gender or racial animus, nor is it sufficient to overcome all of the other factors indicating an absence of such bias in Mr. Townley's actions toward plaintiff.

Even giving plaintiff the benefit of the doubt and assuming that she satisfied her *prima facie* burden, the Court finds that summary

---

[6]Defendant also points out that plaintiff's position was not filled by anyone of a different race or gender. While this factor is ordinarily relevant, its relevance in this matter is minimal because defendant decided to divide plaintiff's team among the other remaining team leaders in lieu of hiring a new team leader to replace plaintiff. This decision was likely influenced by the fact that defendant was aware at that time that the call center would permanently close in March 2005, causing every employee in the call center to be laid off at that time.

judgment in favor of defendant on the discriminatory discharge claim is appropriate. Defendant has articulated a legitimate, nondiscriminatory reason for terminating plaintiff's employment: her repeated tardiness. Even if plaintiff had established a *prima facie* case of discrimination, the burden would shift back to her to show that defendant's reason for her discharge was a pretext for unlawful discrimination. Plaintiff cannot meet this burden. She has not identified any other employees with attendance records similar to hers who received different or more favorable treatment.[7] Plaintiff has failed to create a genuine issue of material fact showing that the stated reason for her termination was merely a pretext for race or gender discrimination. With respect to her hostile environment claim, plaintiff must show that: (1) she belongs to a protected group; (2) she was subject to unwelcome harassment; (3) a causal nexus exists between the harassment and plaintiff's protected group status; and (4) the harassment affected a term, privilege, or condition of employment. See Gordon v. Shafer Contracting Co., Inc., 469 F.3d 1191, 1194 (8th Cir. 2006). Plaintiff's allegation that she was governed by a different set of rules is not enough to establish unwelcome harassment. Further, as discussed above, there is no evidence of any nexus between the way plaintiff was treated and her protected group status. For these reasons, plaintiff's hostile environment claim also fails.

---

[7] Plaintiff testified that other team leaders would often come to work one to three hours late. However, she admits that she does not know if they were disciplined. Plaintiff also presents no evidence that any of the other team leaders were tardy as frequently as she was.

Plaintiff next claims that she was denied benefits under the FMLA. The FMLA provides for up to twelve weeks of unpaid leave to deal with a serious medical condition. 29 U.S.C. § 2612(a)(1). Two types of claims exist under the FMLA: (1) an interference claim, where the employee contends that the employer interfered with her substantive rights under the FMLA; and (2) a retaliation claim, where the employee contends that the employer discriminated against her because she exercised her FMLA rights. Stallings v. Hussmann Corp., 447 F.3d 1041, 1050 (8th Cir. 2006). In her amended complaint, plaintiff asserts a claim of "[d]enial of application for FMLA." The Court will construe this as a an interference claim.

To prevail on this claim, plaintiff must establish that: (1) she was an eligible employee; (2) defendant was an eligible employer; (3) she was entitled to leave under the FMLA; (4) she gave defendant notice of her intent to take leave; and (5) defendant denied her FMLA benefits. Hoge v. Honda of America Mfg., Inc., 384 F.3d 238, 244 (6th Cir. 2004). Plaintiff, in her amended complaint and deposition testimony, states that she repeatedly asked for information regarding her rights under the FMLA due to her continuing chest pains. She also alleges that defendant never responded to her requests. Further, although plaintiff does not specifically allege that she is an eligible employee or that defendant is a covered employer, her deposition testimony suggests that such is the case. While the Court cannot conclude that plaintiff has a serious medical condition that would entitle her to FMLA leave, plaintiff does allege that her chest pains caused her to miss work on several occasions and that they caused her to be hospitalized for three days.

The defendant does not address plaintiff's FMLA allegations in its motion.  Thus, summary judgment cannot be entered on this claim.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion [#24] for summary judgment is **granted as to plaintiff's claims of discriminatory discharge and hostile work environment**.  Judgment will be entered in favor of the defendant following disposition of plaintiff's FMLA claim.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 23rd day of January, 2008.